IN THE MATTER OF THE APPLICATION OF JOHN JACOB FILTZER FOR A WRIT OF HABEAS CORPUS.

No. 3303

April 4. 1940.                              100 P. (2d) 942.

*George S. Green,* for Petitioner.

*W. T. Mathews,* Deputy Attorney General, *Ernest S. Brown,* District Attorney, of Washoe County, and *Nash P. Morgan,* Deputy District Attorney, for Respondent.

## OPINION

By the Court, DUCKER, J.:

This is a proceeding in habeas corpus. Upon the issuance of the writ petitioner was admitted to bail. The return to the writ shows that the petitioner was held in custody by Ray G. Root, sheriff of Washoe County, by virtue of an executive warrant issued by the governor of this state, pursuant to a requisition issued by the governor of California. In this warrant it is alleged that petitioner stands charged with the crime of failure to provide for wife committed in the county of San Diego, State of California, and is a fugitive from the justice of that state. The requisition papers show that petitioner is charged as follows: "That said John Jacob Filtzer, on or about the 26th day of September, 1939,

in the said county of San Diego, State of California, and before the filing of this complaint, willfully, unlawfully and feloniously abandoned and left his wife, Juliet A. Filtzer, in a destitute condition and refused and neglected to provide her with necessary food, clothing, shelter and medical attendance, although he had at said time sufficient ability to provide and earn the means for her support, and was not justified in so abandoning her by any misconduct on her part."

In the petition for the writ and traverse to the return it is alleged that petitioner is a resident of the State of Nevada, and not a fugitive from justice of the State of California; that he left the State of California on or about the 20th day of October 1939; that when he left California he and his wife no longer maintained the marital relationship in that his wife sought and obtained a decree of separation from him in the superior court of California, in and for the county of San Diego; that pursuant to said decree and on October 5, 1939, he paid to his wife the sum of $40 for her support and maintenance, and thereafter, and after the 15th day of October 1939, he caused to be paid to his wife the sum of $20 as and for her support and maintenance.

On the hearing petitioner introduced in evidence an exemplified copy of a decree of separate maintenance obtained by his wife against him, rendered in the superior court of the State of California, in and for the county of San Diego, on November 4, 1937, in which it was ordered, adjudged and decreed that he pay to her the amount of $10 per week until further order of court.

Petitioner contends that this decree is a bar to a criminal prosecution for abandonment and nonsupport. It is easy to see why such a decree is a bar to a criminal prosecution for wife abandonment, for its terms preclude such an act. The decree has put it out of the power of the husband to commit such an act, by effecting a legal separation. In in re Kuhns, 36 Nev. 487, 137 P. 83, 50 L. R. A. (N. S.) 507, the petitioner and his wife had entered into a written agreement to live separate

and apart, and the court held that, as the agreement of separation was in force, there was no abandonment of the wife. The decree is of equal effect. People ex rel. Com'rs. of Charities v. Cullen, 153 N. Y. 629, 47 N. E. 894, 44 L. R. A. 420.

But it cannot be held a bar to prosecution for failure to provide, which is charged in the complaint. The prosecution was commenced under section 270a of the California Penal Code, which reads: "Every husband having sufficient ability to provide for his wife's support, or who is able to earn the means of such wife's support, who willfully abandons and leaves his wife in a destitute condition, or who refuses or neglects to provide such wife with necessary food, clothing, shelter or medical attendance, unless by her misconduct he was justified in abandoning her, is punishable by imprisonment in the state prison, or in the county jail, not exceeding two years, or by fine not exceeding one thousand dollars, or by both."

The effect of this statute is to make the act of unlawfully abandoning a wife by a husband, a crime, and a further effect is to make his act of unlawfully refusing or neglecting to provide her with the necessary food, clothing, shelter or medical attendance, a crime. Similar statutes have been similarly construed. O'Brien v. State, 90 Tex. Cr. R. 276, 234 S. W. 668; Bobo v. State, 90 Tex. Cr. R. 397, 235 S. W. 878; Stedman v. State, 80 Fla. 547, 86 So. 428; Wald v. Wald, 161 Md. 493, 159 A. 97.

In construing a similar statute, the court, in O'Brien v. State, supra, said [90 Tex. Cr. R. 276, 234 S. W. 669]: "We believe a fair construction of the statute would be as though it read 'that any husband who shall willfully or without justification desert his wife, etc., would be guilty,' or that any 'husband who shall willfully or without justification neglect or refuse to provide for the support and maintenance of his wife, etc., would be guilty.' If the evidence should disclose a state of facts where the husband may not have actually deserted his

wife, but continued to live with her and yet willfully or without justification neglected or refused to provide for her support and maintenance when she was in destitute and necessitous circumstances, he being able to so support and provide for her, we can see no reason why, under the law, he might not be guilty of an offense."

The same reasoning will apply where, as here, a separation has been effected by judicial decree and the obligation for support and maintenance fixed therein.

The case chiefly relied on by petitioner is People ex rel. Com'rs of Charities v. Cullen, supra, but the case is not helpful to him. In that case the husband had been adjudged in a lower court to be a disorderly person in that he had abandoned his wife and left her in danger of becoming a charge upon the public. In the court of appeals the question was whether the defendant had abandoned or deserted his wife. The court held that there could be no abandonment within the meaning of the statute when the husband lives apart from his wife in obedience to a judgment of separation from bed and board, obtained at the suit of the wife. The court said [153 N. Y. 629, 47 N. E. 896, 44 L. R. A. 420]: "But the question here is whether the husband has committed the statutory offense of desertion or abandonment. * * * Abandonment, in the sense in which the term is used in the statute, means the actual and willful desertion by the husband of the wife. It is the willful act of actually leaving her, or separating from her, and the withdrawal of all aid and protection implied in the marriage relations. If the wife herself procures the separation, or consents to it, the case does not come within the statute."

The judgment of separation was therefore a bar to the prosecution. So it would be here if petitioner was charged only with wife abandonment. But he is charged also with the crime of wrongfully refusing and neglecting to provide his wife with the necessary food, clothing, shelter and medical attendance.

The separate maintenance decree did not absolve him

from that obligation, as did the judgment in the case, supra. Consequently, the decree cannot be held a bar to the prosecution for the latter offense.

We have examined the other cases cited by petitioner but cannot extract therefrom the conclusion reached by him that a separate maintenance decree in which alimony has been adjudged is a bar to a criminal action in California for nonsupport. He contends that the only remedy the wife has in such a case is by contempt proceedings, or by civil suit brought upon the decree for alimony that may be in arrears. That may be true, as far as the wife is concerned, but she is not a party in the criminal proceedings under said section 270a. The people's right to enforce the penal laws of the state is absolute. It is not dependent upon what remedy may be open to the wife in a civil action. We hold that the decree of separate maintenance is no bar to the criminal prosecution for nonsupport.

It is next insisted by petitioner that he is not a fugitive from justice because after the time charged in the criminal complaint and immediately prior to his leaving the State of California, he paid to his wife the sum of $60 for her support A receipt and statement purporting to show such payment were offered in evidence and admitted, subject to the objections of respondent. We now sustain those objections, and hold the offered evidence inadmissible.

The offense of willfully omitting, without lawful excuse, to provide the wife with the necessary food, clothing, shelter or medical attendance under said section 270a, is in the nature of a continuing offense. It was so held in People v. Curry, 69 Cal. App. 501, 231 P. 358, under section 270 of the Penal Code, where the offense was shown to have been committed against minor children, and the same construction should be given to said section 270a. See Ex Parte Quint, 54 N. D. 515, 209 N. W. 1006, and People ex rel. Gottschalk v. Brown, 237 N. Y. 483, 143 N. E. 653, 32 A. L. R. 1164, for statement of this principle.

■ The offense charged is founded upon neglect of duty and continues so long as the neglect does not cease. People ex rel. Gottschalk v. Brown, supra. The separate maintenance decree made on or about the 4th day of November 1937, providing that petitioner pay to his wife $10 per week for her support, fixed his obligation therefor. A prosecution for neglect to comply with the order could have been maintained at any time thereafter, prior to the running of the statute of limitations. Petitioner was in the State of California at the time charged in the complaint, and the $60 payment, conceding it to have been made, is not conclusive evidence that he was not guilty of neglect to provide for his wife at that time. It may have been made in payment of sums long past due. Whether the $60 payment covered the period charged in the complaint, and that petitioner was not in default at that time, are questions of fact determinable by the court of the demanding state.

A somewhat similar situation confronted the court in Ex Parte Quint, supra. The court said [54 N. D. 515, 209 N. W. 1007]: "Point is made of the fact that the affidavit of petitioner's wife shows that the petitioner sent money averaging $30 per month up to and somewhat beyond the date on which he is charged with having committed the crime of abandoning his children. The fact remains that the complaint specifically charges the crime to have been committed on October 10, 1925. Whether in the judgment of a jury, in view of the items of money sent from time to time, averaging $30 per month, and of his conduct thereafter in substantially discontinuing all remittances, the petitioner would be guilty of the crime charged is a question of fact with which we are not concerned in this proceeding, and which we cannot investigate. Such payments may be defensive matter in a trial on the merits. State v. Clark, 148 Minn. 389, 182 N. W. 452."

■■ It is well settled that a court, on habeas corpus in interstate extradition, cannot try the question of guilt or innocence of the accused. Ex Parte La Vere, 39 Nev.

214, 156 P. 446; Hyatt v. New York ex rel. Corkran, 188 U. S. 691, 23 S. Ct. 456, 47 L. Ed. 657; Munsey v. Clough, 196 U. S. 364, 25 S. Ct. 282, 49 L. Ed. 515.

As said in Bruce v. Rayner, 4 Cir., 124 F. 481, 484: "It would seem that it is not competent either for the governor or for the court to go into evidence tending to show the guilt or innocence of the party whose surrender is sought. This would, in effect, be a trial of the case, although the manifest design of the Constitution and the act of Congress is that the party demanded should be remitted for trial exclusively in the state in which he stands charged with having committed the offense."

See In re White, 2 Cir., 55 F. 54; 21 Cyc 328, and cases cited in note 47. The burden is on petitioner to show that he is not a fugitive from justice. Ex Parte Montgomery, D. C. 244 F. 967; Roberts v. Reilly, 116 U. S. 80, 6 S. Ct. 291, 29 L. Ed. 544; People v. Munnie, 354 Ill. 390, 188 N. E. 545. The onus thus placed on him is not sustained by the offered evidence.

There is nothing in the Nevada cases cited by petitioner contrary to the well-settled rule on habeas corpus in interstate extradition, that the question of the guilt or innocence of the accused is not triable in the courts of the asylum state. This is not a case where the evidence is of such a character as to show conclusively that the crime charged could not have been committed by the petitioner.

The writ should be and is quashed.

It is ordered that petitioner forthwith surrender himself to the sheriff of the county of Washoe, State of Nevada, to be delivered into the custody of the duly appointed agent of the State of California for return to that state, and that upon compliance with this order his bail may be exonerated.